**In re GRAND JURY INVESTIGATION.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Patricia McLEAN, Defendant-Appellant.**

No. 77–3155

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Dec. 13, 1977.

Charles Halleck, Washington, D. C., Warren S. Shulman, Lawrence A. Weisensee, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Stephen Ludwick, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

FAY, Circuit Judge.

This is an expedited appeal by Patricia McLean from a finding of civil contempt by the United States District Court for the Northern District of Georgia under 28 U.S.C. § 1826 for her refusal to submit handwriting exemplars to the grand jury. She remains free on bond pending the outcome of this appeal. Ms. McLean asks us to decide if federal courts have supervisory powers over grand jury proceedings and, if so, whether the government should be required to make a preliminary showing justifying the requested testimony.

Appellant requests this circuit adopt in full or in part the Third Circuit's holdings in *In re Grand Jury Proceedings*, 486 F.2d 85 (3rd Cir. 1973), (*Schofield I*), and *In re Grand Jury Proceedings*, 507 F.2d 963 (3rd Cir. 1975) (*Schofield II*).

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5th Cir., 1970, 431 F.2d 409, Part I.

In *Schofield I*, the witness Jacqueline Schofield, after being subpoenaed to appear before a grand jury and upon appearing at the designated time and place, was not asked to testify but rather to submit handwriting exemplars and to allow the taking of her fingerprints and photograph. After conferring with counsel, she refused. Motion was made to the district court for an order requiring Mrs. Schofield's compliance. No information was supplied the court concerning the reason these items were requested. The district court so ordered and Mrs. Schofield again refused to comply. The court thereafter found her in civil contempt of its order. On appeal the Third Circuit reversed stating:

> . . . we think it reasonable that the Government be required to make some preliminary showing by affidavit that each item is at least relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose. We impose this requirement both pursuant to the federal courts' supervisory power over grand juries and pursuant to our supervisory power over civil proceeding brought in the district court pursuant to 28 U.S.C. § 1826(a). 486 F.2d at 93.

*Schofield II* raises questions concerning the district court's application on remand of the holding in *Schofield I*. The government submitted an affidavit [1] which both the district court and the Third Circuit found sufficient under *Schofield I's* "three pronged affidavit requirement." The Third Circuit noted it's review was controlled by the rule of abuse of discretion.

On September 20, 1977, Ms. Patricia McLean appeared pursuant to subpoena before a federal grand jury sitting in Atlanta, Georgia, investigating the activities of "Mr. Thevis". Ms. McLean refused, upon advice of counsel, to either be sworn or to answer any questions. She was then taken before Chief Judge Albert J. Henderson, Jr. of the district court. He directed her to submit to the oath but reserved ruling on the issue of her Fifth Amendment privilege against self-incrimination until it arose.

During this hearing, counsel for Ms. McLean told the Court he had no idea what the investigation involved or why Ms. McLean had been called to testify. At that time the United States Attorney indicated it was an all encompassing investigation of Mr. Thevis.

After being brought back before the grand jury, Ms. McLean took the oath but again invoked her privilege against self-incrimination and would not answer any questions. Once again Ms. McLean was subpoenaed to testify before the grand jury and on October 19, 1977, her date of appearance, refused to provide handwriting exemplars as directed by the grand jury foreman. She also refused to testify. Consequently Ms. McLean was brought before Judge Charles A. Moye of the district court. She was represented by counsel throughout all proceedings.

At that hearing counsel for Ms. McLean requested the court to ask the government whether she was a potential defendant and noted her subpoena made no mention of handwriting exemplars. Counsel also asked the court for an *in camera* hearing between the court and the prosecutor to determine if

1. The affidavit states:

Walter S. Batty, Jr., Assistant United States Attorney in and for the Eastern District of Pennsylvania, states as follows:

1. The January 25, 1974 Grand Jury for the Eastern District of Pennsylvania is now conducting investigations of various alleged illegal activities in the said District; said investigations involve possible violations of federal criminal statutes, including 18 U.S.C. §§ 1621 [perjury], 1623 [giving false declarations]. Jacqueline Schofield has been subpoenaed by the said Grand Jury and has been fully ad-

vised that she is a potential defendant in its investigation.

2. It is essential and necessary to the said Grand Jury investigation that Jacqueline Schofield furnish before and to the Grand Jury, or to any duly appointed agent of the said Grand Jury, exemplars of her handwriting and/or handprinting, and to permit that her photograph and fingerprints be taken. Such items will be used solely as a standard of comparison to determine whether or not the witness uttered any forged, falsely made, altered or counterfeited checks.

she was a "target" or potential defendant. The court ordered the government to reveal whether Ms. McLean was a target, holding it bore on the issue of relevance. The United States Attorney indicated she was.

A recess was taken and the hearing resumed later that same afternoon. At this time the government stated it intended to move for immunity for McLean but it first wished to obtain the handwriting samples so there would be no question later that the samples were not immunized. The government repeated Ms. McLean was a possible defendant.

The handwriting exemplars requested included her name and a sentence from either a magazine or a novel that would contain all of the letters of the alphabet, each written ten different times on ten separate sheets of paper. The request was granted and the court directed Ms. McLean to furnish the samples.

Ms. McLean appeared before the grand jury the next day and continued her refusal to provide the samples.

At all times counsel for Ms. McLean argued that the requirement of *Schofield I* and *Schofield II* should be met before she be required to provide the samples.

Although not by affidavit, the government did advise the court that Ms. McLean was a potential defendant, that this was an investigation of crimes believed to have occurred in the Northern District of Georgia, that it desired the samples in order to make comparisons with a document already in its possession, and that its sole purpose in requesting the samples was to make legitimate investigative comparisons with documents that may contain her handwriting and lead to the "discovery or further gathering of evidence of criminal offenses."

Finally the court decided it would not apply the *Schofield I* procedure ". . . until the Fifth Circuit says that I must . . . ." The Court found that the government had made a sufficient showing that there was no abuse of the grand jury process. The court ruled Ms. McLean in civil contempt under 28 U.S.C. § 1826 and that even though she had been granted immunity the handwriting exemplars were not included. We affirm.

*Schofield I* recognized that *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), "[b]oth hold that the fourth amendment does not require any preliminary showing for the issuance of a grand jury subpoena, either to compel testimony, or to compel production of voice or handwriting exemplars." 486 F.2d at 89. But the Third Circuit distinguished between an adjudication based on constitutional principles and one "involv[ing] the district court's supervisory power over the proper use of its process in a grand jury proceeding, the supervisory power of this court over the manner in which the district court supervises the proper use of its process, or the substantive and procedural law of civil contempt." *Ibid.*

 The Third Circuit made it clear that the guidelines it set were to be the law in that circuit and not required by the Constitution or the Supreme Court. We are not prepared to make such the law in the Fifth.[2] As noted by the Supreme Court:

Any holding that would saddle a grand jury with mini-trials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. *United States v. Dionisio*, 410 U.S. 1, 17, 93 S.Ct. 764, 773 (1973).

In the absence of a witness asserting harassment or prosecutorial misuse of the system, we will not impose upon the government or the district courts any preliminary requirements or procedures which

---

**2.** The Ninth Circuit has also refused to do so. *See In Re Hergenroeder*, 555 F.2d 686 (9th Cir. 1977).

would impede the grand jury's investigative powers.[3]

In this case the government has provided the court with sufficient information to counter any allegations of harassment or prosecutorial misuse of the system which might require the quashing of the subpoena. Therefore, we find the district court was correct and the finding of contempt is affirmed.

3. We are aware of the district court case, *In Re Grand Jury Investigation*, 425 F.Supp. 717 (S.D. Fla.1977), which came to a different conclusion in the application of *Schofield I's* requirements. However, because the government met the affidavit requirement, the result was the same.