**In Re SPECIAL GRAND JURY NO. 81–1 (Leon D. Harvey).**

**No. 81–2187.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 5, 1981.

Decided April 23, 1982.

---

William Moffitt, Arlington, Va., for appellant.

William Otis, Asst. U. S. Atty., Alexandria, Va., for appellee.

Before MURNAGHAN, SPROUSE and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

This appeal raises the question whether the district court should have quashed a subpoena issued by a grand jury to an attorney representing the appellant, Leon D. Harvey, who is a target of an ongoing grand jury investigation. In the motion to quash that the district court denied, Harvey argues that if his attorney is forced to appear before the grand jury, his sixth amendment right to choose his own attorney will be infringed and information protected by the attorney-client privilege will be revealed. We believe that in this situa-

tion, where the attorney subpoenaed by a grand jury is in an ongoing attorney-client relationship with a target of the grand jury, the United States Attorney is required to make a preliminary showing of relevance and need before the attorney can be required to appear.

In this preliminary showing, the United States Attorney must demonstrate by affidavit that the information sought is relevant to and needed for its investigation, that the investigation is properly within the grand jury's jurisdiction, and that the information sought is not primarily for another purpose. Because such a preliminary showing has not been made in this case, we reverse the district court and grant Harvey's motion to quash the subpoena issued to his attorney.

I.

On October 27, 1981, a subpoena *duces tecum* was issued, on application of an Assistant United States Attorney for the Eastern District of Virginia, to the law firm of Mark & Moffitt, P. C. This subpoena directed attorneys J. Flowers Mark and William B. Moffitt and the custodian of the records of the law firm to appear before the grand jury on November 4, 1981 with their records of all money and property received from and disbursed on behalf of Leon D. Harvey. Mark and Moffitt have represented Harvey throughout the grand jury proceedings and in prior criminal prosecutions which are also the subject of the grand jury's investigation.

On November 4, 1981, Mark and Moffitt filed a motion to quash the subpoena in the United States District Court for the Eastern District of Virginia on the ground that the subpoena required disclosure of privileged communications in their representation of Mr. Harvey. The court denied both the motion to quash and another motion by Mr. Moffitt to intervene on behalf of Harvey.[1] This court subsequently granted Harvey's writ of mandamus directing the district court to permit Harvey to intervene in

---

1. At this hearing, the subpoena for Moffitt was withdrawn and is no longer at issue.

the motion to quash. This court also stayed Mr. Mark's appearance before the grand jury pending a decision on Harvey's motion to quash. At a hearing before the district court on November 23, 1981, Harvey argued that the documents were protected by the attorney-client and work product[2] privileges as well as the sixth amendment and submitted the documents to the court for *in camera* inspection.

On December 4, 1981, the district court found that none of the documents "facially disclosed any confidential communication between Harvey and his attorneys," denied Harvey's motion to quash, and directed Mark to appear before the grand jury with the requested records. The court described the documents as follows:

> These *in camera* records consisted of numerous checks payable to various and sundry persons, including Clerks of Court, printers, consultants, out-of-town attorneys, rail and air transportation, and other similar expenses incurred by Mark & Moffitt, P. C. *in re* Harvey's defense of his marijuana convictions in this and in the Georgia federal courts—and excerpts from their computer printouts listing these payments as charges against their Harvey escrow account.

> These excerpts from their computer printouts also listed the dates and the amounts of money they had received from Harvey during the period in question.

On December 7, 1981, Harvey noted his appeal and moved that this court stay Mark's appearance before the grand jury. We granted the stay and issued orders for an expedited briefing schedule and submission of the subpoenaed documents for *in camera* inspection.

## II.

■ The government first challenges the appealability of the denial of Harvey's motion to quash the subpoena directed to his attorney. Generally, one served with a

subpoena may not appeal a denial of a motion to quash without first resisting the subpoena and being found in contempt. *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). When the subpoena is directed to a third party, however, one who files a motion to quash and who claims that production of the subpoenaed documents would violate his fifth amendment privilege against self-incrimination is permitted an immediate appeal. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1818). The theory underlying this exception to the general rule is that in those situations there is a real possibility the third party will not risk being found in contempt and will turn over the subpoenaed documents. If that happens the information will be revealed and the party challenging the subpoena will be denied effective appellate review at a later stage.

■ Although the first circuit has denied an immediate appeal in a case where a party's attorney was subpoenaed, *see In re Oberkoetter*, 612 F.2d 15 (1st Cir.), *app. for stay denied*, 444 U.S. 1041, 100 S.Ct. 726, 62 L.Ed.2d 727 (1980), the vast majority of the circuits have allowed such appeals. *See, e.g., In re Grand Jury Proceedings (Jeffrey Fine)*, 641 F.2d 199 (5th Cir. 1981); *In re Grand Jury Proceedings (Gary Katz)*, 623 F.2d 122 (2d Cir. 1980); *In re November 1979 Grand Jury*, 616 F.2d 1021 (7th Cir. 1980); *In re Grand Jury Proceedings (Appeal of FMC Corp.)*, 604 F.2d 798 (3d Cir. 1979); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671 (7th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). We agree with the majority of the circuits and hold that identical interests supporting the immediate appeal rule in *Perlman* support allowing the appeal in this case.

## III.

■ In general, the attorney-client privilege protects from disclosure communi-

---

2. Because our holding in Harvey's favor is based on the attorney-client privilege and his sixth amendment interests, we decline to rule on whether the work product privilege applies in this case.

cations from a client to his attorney made in confidence and concerning legal advice sought from the attorney. *See* 8 Wigmore, *Evidence*, § 2292 at 554 (McNaughton Rev. 1961). Payment of fees and expenses generally is not privileged information because such payments ordinarily are not communications made for the purpose of obtaining legal advice. *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981). *Cf. National Labor Relations Board v. Harvey*, 349 F.2d 900 (4th Cir. 1965) (dicta) (the fact of retainer and terms of employment ordinarily not privileged); *Behrens v. Hironimus*, 170 F.2d 627, 628 (4th Cir. 1948) ("[T]he existence of the relation of attorney and client is not a privileged communication.")

■■ An exception to the no privilege rule is recognized "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977). Application of these privilege rules, of course, turns on the particular facts of the case. In re *Grand Jury Proceedings v. Jones*, 517 F.2d 666, 671 (5th Cir. 1966); *Baird v. Koerner*, 279 F.2d 623, 631 (9th Cir. 1960). In order to rule on the privilege issue in this case, however, the court must know what relevance the requested documents have to the grand jury investigation. Unless the nature of the investigation is disclosed, a court cannot determine whether disclosure of the documents "would implicate the client in the very criminal act for which legal advice is sought."

■ The government has consistently refused to reveal any details regarding the purpose of the grand jury investigation. It has disclosed only that the investigation relates to possible tax fraud and drug offenses and indicated·in oral argument that the subpoenaed documents might be used as a basis for a net worth tax evasion prosecution.[3] With such sketchy disclosure of the purposes for which the documents are sought, Harvey is unable to articulate, and this court is unable to discern, whether disclosure of the documents would implicate him in the criminal activity for which representation was sought. Furthermore, unless the district court knows more than we do about the government's purposes for seeking the documents, it would be in no better position to rule on the privilege issue if we were to remand this case for ruling on the documents item by item. Until the government discloses the relevance of the subpoenaed documents to the grand jury's investigation, proper ruling on the privilege issue cannot be made.

Not only has the government refused to reveal information necessary for the court to decide whether the attorney-client privilege applies in this case, this subpoena implicates Harvey's constitutional right to counsel of his choice. When a subpoena is issued against an attorney in an ongoing attorney-client relationship, the attorney may well be placed in the position of becoming a witness against his client or risking contempt. In either case, there is a strong possibility that a wedge will be driven between the attorney and the client and the relationship will be destroyed.[4] These important private interests should not be sacrificed to the public interest furthered by the grand jury's criminal investigation unless some preliminary showing is made by the government.

■ We recognize that normally a subpoena is presumed to be regular, and that

---

**3.** When asked if the government had an "expectation" of finding incriminating evidence for a tax evasion prosecution or simply a mere "hope," government's counsel at oral argument responded that they had a "hope" of finding such material.

**4.** If the attorney resists the subpoena and is found in contempt, the punishment for con-

tempt may totally destroy the attorney-client relationship. Fed.R.Crim.P. 17(g). If the attorney complies with the subpoena and appears before the grand jury behind closed doors, a substantial chilling effect on truthful communications from the client to the attorney thereafter would be likely, especially if the client is indicted.

the subpoenaed party has the burden of showing that the information sought is privileged or that there has been an abuse of the grand jury process. *See, e.g., Beverly v. United States,* 468 F.2d 732 (5th Cir. 1972).[5] Where the attorney for the target of an investigation is subpoenaed, however, attorney-client privilege considerations and sixth amendment interests arise automatically and a preliminary showing must be made by the government before the attorney can be forced to appear before the grand jury.

 Grand jury subpoenas are issued pro forma with no prior court approval. As such they are instrumentalities of the United States Attorney's office although issued under the district court's name and for the grand jury. Even though in general the need for assistance of counsel at the grand jury is not as great as the need for counsel after indictment and at trial, a witness in the grand jury room faces the experienced counsel of the prosecution and thus in many circuits has the right to consult with his attorney outside the grand jury room in order to protect his fifth amendment right against self-incrimination. *See United States v. Mandujano,* 425 U.S. 564, 605–06, 96 S.Ct. 1768, 1790–91, 48 L.Ed.2d 212 (1976) (Brennan, J., concurring) (citing *United States v. George,* 444 F.2d 310, 315 (6th Cir. 1971); *United States v. Weinberg,* 439 F.2d 743, 745 (9th Cir. 1971); *United States v. Capaldo,* 402 F.2d 821, 824 (2d Cir. 1968), *cert. denied* 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764)). Though an unindicted grand jury witness' sixth amendment right to counsel does not attach at the grand jury stage, the witness nonetheless is "faced with the prosecutorial forces of organized society and immersed in the intricacies of substantive and procedural criminal law." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Thus, even though the witness does not have the right to have counsel appointed for him, he has a substantial interest in

continuing to receive the assistance of counsel he has already retained for purposes of the grand jury investigation. The interests in maintaining a proper attorney-client relationship and protecting the confidences of that relationship are similar to the sixth amendment right to effective assistance of counsel and fundamental to our adversarial system of justice. In balancing the public interest in effective investigation of criminal activity by grand juries against the substantial private interests of preserving a proper on-going attorney-client relationship and protecting confidential communications, it is not an unreasonable burden to require the government to make a preliminary showing by affidavit.

### IV.

In determining what the government must present in its preliminary showing, we are provided guidance by the third circuit in *In re Grand Jury Proceedings (Schofield),* 486 F.2d 85 (3d Cir. 1973). In that case, the petitioner, who was a potential target of a grand jury investigation, was held in contempt for refusing to comply with a grand jury subpoena directing her to provide handwriting samples, photographs, and fingerprints. In reversing the conviction for contempt, the court established the broad rule that the government is not entitled to have a subpoena enforced unless it makes a preliminary showing by affidavit that the items sought are "relevant to an investigation being conducted by the grand jury and properly within its jurisdiction, and is not sought primarily for another purpose." *Id.* at 93.

 This three-pronged requirement is designed to insure that before a private citizen can be forced to testify before a grand jury, the United States Attorney has grounds to believe the subpoena is proper. We note that the relevance requirement of the *Schofield* standard is appropriate in this case to determine whether the documents fall under the attorney-client privilege.

---

5. We also note that the district court, upon motion, "may quash or modify the subpoena [requesting documents] if compliance would be unreasonable or oppressive." Fed.R.Crim.P. 17(c).

This subpoena, however, also risks the destruction of an ongoing attorney-client relationship. In balancing the public interest in providing the grand jury with the information it may need against the private interest of maintaining a confidential and important professional relationship, it is not enough that the subpoena be shown to be regular. When a grand jury subpoena undermines an ongoing attorney-client relationship, the United States Attorney should also show by affidavit an important need[6] for the information sought. Thus, in this situation, the United States Attorney must include in his preliminary showing a demonstration that the information sought is relevant to *and needed* for an investigation being conducted by the grand jury.

We agree with the court in *Schofield* that the grand jury secrecy requirement of Fed. R.Crim.P. 6(e) does not necessitate a general rule requiring the government's threefold preliminary showing be made to the district court *in camera*. We leave to the district court's discretion a determination that special circumstances may warrant *in camera* review of the government's affidavits. Challenge to the adequacy of the government's preliminary showing may be made at the enforcement hearing or, as in this case, in a motion to quash the subpoena. We reiterate, however, that we do not adopt the *Schofield* rule that a preliminary showing must be made for every grand jury subpoena.[7] We hold only that the threefold preliminary showing by affidavit (including a showing that the information is needed) is required when a subpoena is issued to an attorney who has been retained by the target of the grand jury investigation and important sixth amendment and attorney-client privilege issues are raised.

## V.

We are convinced that our holding in this case is not contrary to the principles laid down by the Supreme Court in *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), and *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). In *Dionisio*, a group of grand jury witnesses were advised that they were targets of a grand jury investigation and were subpoenaed to read the transcript of a lawfully intercepted wire conversation into a recording device. Dionisio refused to comply with the subpoena on the grounds that the procedure violated his fourth and fifth amendment rights. At the enforcement hearing, the government stated that the statements were to be used only for comparison to determine if any of the witnesses was the one whose conversation was intercepted, and stated that the voice exemplars were necessary for the investigation. The seventh circuit denied enforcement because the government had not made a preliminary showing of probable cause. *See, Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). The Supreme Court reversed, holding that the fourth amendment prohibition against unreasonable search and seizure does not require a preliminary showing before a grand jury subpoena can be issued for the purpose of obtaining testimony or voice or handwriting exemplars. The issue in *United States v. Mara, supra*, was similar.[8]

---

6. We do not think it necessary to determine at this point what would constitute a showing of an important need. The requirements for such a showing will vary according to the circumstances of each case. We do note, however, that there are two inquiries the prosecution must address when making a showing of need. First, is the information sought necessary or important to the grand jury investigation? Second, is the subpoenaed attorney the best source for the information? A showing that the information cannot be obtained from another source would, of course, be important to, but not necessarily conclusive for, the second inquiry.

7. In withholding judgment on the issue whether a preliminary showing must be made in every case, we understand that other circuits have declined to adopt such a rule. *See, e.g., In re Liberatore*, 574 F.2d 78 (2d Cir. 1978); *In re Grand Jury Investigation (McLean)*, 565 F.2d 318 (5th Cir. 1977).

8. In that case, the government sought enforcement of a subpoena requesting handwriting exemplars without making a showing of probable cause. The court held that enforcement of the subpoena would not constitute an unreasonable search and seizure. The government did, however, supply affidavits showing that the exemp-

*Dionisio* and *Mara* were based on constitutional challenges to enforcement of the subpoenas. We are convinced, however, that the preliminary showing we now require is a proper exercise of our supervisory power over the administration of justice in this circuit. Courts have refused to enforce subpoenas for a variety of nonconstitutional reasons. *See In re Grand Jury Proceedings (Schofield), supra,* at 91. This court has supervisory power over the conduct of grand jury proceedings within this circuit and has the power to fashion rules to further the administration of justice when such rules are necessary. *See McNabb v. U. S.,* 318 U.S. 332, 340–41, 63 S.Ct. 608, 612–13, 87 L.Ed. 819 (1943); *Fay v. New York,* 332 U.S. 261, 297, 67 S.Ct. 1613, 1632, 91 L.Ed. 2043 (1947). We do not hold that the sixth amendment requires a preliminary showing in this case. We do hold, however, that in exercise of our supervisory power over federal grand jury proceedings in this circuit, the preliminary showing described is appropriate to protect a person's interest in maintaining a proper attorney-client relationship. Requiring such a showing in this limited situation will not impede the effectiveness of the grand jury[9] and may well facilitate the investigation by providing the basis for a district court's early ruling on a witness' assertion of the attorney-client privilege.

### VI.

 The United States Attorney has failed to disclose the purposes of the grand jury investigation, the relevance of the information sought by the subpoena of Mr. Marks, or any important need to such information. Neither has the government attempted to dissuade us from believing that

it is simply on a "fishing expedition." For the reasons stated, the United States Attorney is required to make the described preliminary showing in order to acquire the subpoenaed documents from Mr. Marks. Accordingly, Harvey's motion to quash the subpoena is granted and the district court's denial of such motion is

REVERSED.

MURNAGHAN, Circuit Judge, dissenting:

Regrettably, I find myself unable to concur in the principal proposition for which the majority panel opinion stands. Despite a single decision in the Third Circuit Court of Appeals, *In re Grand Jury Proceedings (Schofield),* 486 F.2d 85 (3d Cir. 1973), to the contrary, it appears well established by authority, and on reflection well grounded in principle, that the grand jury should be free to subpoena without preliminarily, on a generalized basis, being required to justify the relevance and necessity of its action.[1] Citizenship confers many benefits. It also imputes certain responsibilities, one of which is to aid the government's search for information. It is sufficiently more likely than not that the search will be for relevant information properly disclosable to relieve the grand jury and government prosecutors of a requirement, applicable in every case, that they first establish probable cause. *See, e.g., In re Grand Jury Investigation (McLean),* 565 F.2d 318, 320 (5th Cir. 1977) ("In the absence of any witness asserting harassment or prosecutorial misuse of the system, we will not impose upon the government or the district courts any preliminary requirements which would impede the grand jury's investigative powers."); *In re Grand Jury Proceedings (Hergenroeder),*

---

lars were essential and necessary to the grand jury investigation and were to be used for a limited purpose.

**9.** The *Schofield* rule "has not caused any serious disruption of grand jury proceedings" in the third circuit. *Hearings on H.R. 94 Before the Sub-committee on Immigration, Citizenship, and International Law of the House Committee in the Judiciary,* 95th Cong., 1st Sess. 1589 (1977).

**1.** *E.g., In re Special February 1975 Grand Jury (Lopez),* 565 F.2d 407, 411 (7th Cir. 1977) ("A grand jury is not under a duty to disclose reasons for the information it seeks."); *In re Berry,* 521 F.2d 179, 184 (10th Cir. 1975), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975) ("Relevancy and materiality are not pertinent to subpoena enforcement.").

555 F.2d 686, 686 (9th Cir. 1977) ("In view of the presumption that the government obeys the law, we see no reason to inject into routine grand jury investigations the delay and imposition upon district courts that will be opened up by a rule institutionalizing these disclaiming affidavits.").

That is, emphatically, not to say that, where the prospective witness in fact assumes the burdens of going forward and of persuasion and establishes *prima facie* that the testimony should not be compelled, the evidence nevertheless must be produced. It all comes down to the choice as to which way the presumption should run. I cannot accept a blanket presumption of irregularity, and the resulting rule that proof of probable cause must precede production of any evidence subpoenaed by the grand jury.

Of course, the members of the panel majority purport to restrict the decision to the case before us, one in which the subpoena issues to counsel for someone who is a target of grand jury inquiry. However, once such a doctrine is accepted with respect to lawyers, it will not be long before well-founded notions of equality will require the extension to all persons of a doctrine which is ill-conceived even if limited to attorneys. It does not do to speak with pride of equality under the law, at the same time creating a preferential or "ennobled" status for lawyers.

Here we are confronted with payments and receipts of a lawyer in connection with his representation of the grand jury's target, Leon Harvey. The government foolishly, from a strategic point of view, has sought to conceal the objectives for the subpoena, and it may well be that the district judge may have occasion to conclude that the prospective witness has carried the requisite burden to show that the subpoena, considered on an item-by-item or category-by-category basis, should be quashed, in whole or in part. However, it is in the trial court and not at the appellate level that factual issues pertinent to inquiries of that type should be resolved. I humbly suggest that we make a bad mistake, invading the province of the district court, in establishing a blanket rule that the burden of showing good cause must generally be met by the government before it can ever subpoena a lawyer who has an on-going representational relationship with a grand jury target.

At the present stage, Harvey's attorney stands in the same shoes as a banker or stockbroker whose ledger of ordinary business transactions is subpoenaed. Simply by maintaining a ledger to record transactions, an attorney has not, under the general rule, engaged in privileged communications. Rather, the communications are privileged only "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977). *See also, e.g., In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 672 (5th Cir. 1975); *In re Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19 (3d Cir. 1980) (*per curiam*), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). Since no showing has been made that disclosure of the documents would implicate the client in "the very criminal activity for which legal advice was sought," the documents are no different than ledger sheets of a banker or stockbroker. If the attorney, like any other grand jury witness, shows that the materials are privileged, or overcomes the grand jury's presumption of regularity, then he is entitled to have the subpoena quashed.

To me it simply distorts the concept of the democratic process to put the lawyer in a separate category, and free him of a responsibility which must be assumed by other citizens. The argument that the relationship with the client in and of itself is so tender that to require him to produce the subpoenaed materials would unduly risk dilution of the attorney-client privilege and of the right of an accused to have the assistance of counsel for his defense has a hollow ring. A client who loses faith in his lawyer because the lawyer complies with the law, as a banker or a stockbroker must comply with the law, has adopted an unreasonable stance.

If the burden is on the witness, as I submit it should be, we should not quash the subpoena, but rather we should affirm the district court's action, by which it carefully left available to the reluctant witness the opportunity, with respect to each document or category of documents, to assert a privilege, to put forward the grounds supporting the privilege, and to obtain a ruling from the district court before any compulsion to turn over the document or documents becomes effective. Assuming the district court concludes that production of the material should not be compelled, no problem exists. If, however, the district court determines that the material should be disclosed, there is available an immediate appeal pursuant to 28 U.S.C. § 1826(b),[2] and, where appropriate, a stay of incarceration, should the prospective witness elect to stand on his position and to draw a contempt citation.[3]

The panel majority's concern that the government is overstepping its bounds can be assuaged without fundamentally altering the burdens in grand jury proceedings. At an enforcement proceeding, a district judge should feel free to conduct *in camera* hearings where necessary to elicit information. Specifically, in order to determine the nature of the investigation he may wish to hear testimony from the Assistant United States Attorney regarding the matter. Fed.R.Crim.P. 6(e)(3)(C)(i) specifically permits disclosure of matters occurring before a grand jury "when so directed by a court preliminary to or in connection with a judicial proceedings," and provides:

> If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Moreover, courts have long held that *in camera* hearings are an appropriate and efficacious means of resolving disputed issues of privilege. *Kerr v. United States*, 426 U.S. 394, 405–06, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976); *McLawhorn v. North Carolina*, 484 F.2d 1, 5–6 n.13 (4th Cir. 1973); *Halkin v. Helms*, 598 F.2d 1, 5–7 (D.C.Cir.1978). Stonewalling by the government in those proceedings might properly be considered by the district court in ruling on the claim of privilege.

2. 28 U.S.C. § 1826(b) provides in part:
 Any appeal from an order of confinement under this section [governing recalcitrant grand jury witnesses] shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

3. Appellant and *amici curiae* express concern that a lawyer should be compelled to risk contempt and incarceration for a client and, on the other side of the coin, concern for the client whose lawyer, not confident of the validity of the position or unwilling in any event to languish in durance vile, proceeds to comply with the subpoena over the protest of the client. The problem may well, however, be more apparent than real. Leon Harvey has himself intervened. It is well within the scope of alternatives available to the district judge, should he find a claim of privilege as to a particular document or group of documents invalid, for him to summon Leon Harvey to appear before him, to direct Harvey to order the lawyer to turn over the materials, and to find Harvey, rather than the lawyer, in contempt for failing to do so.

 In a post-briefing and post-argument communication, an Assistant U. S. Attorney has indicated that Mr. Harvey may have disappeared, making that alternative unworkable. Assuming that to be the case, and further assuming that he cannot be located and persuaded or compelled to appear before the district court, obviously at some point a lawyer is free to determine how much he is required not merely to represent a client to the best of his ability but to substitute himself for a client not willing himself to sustain the contempt citation necessary to have the issue reviewed by the appellate court.

 Moreover, the actuality of severe inconvenience to the lawyer is magnified unduly. Whenever the order of a district court is appealed, and the correctness of the ruling of the district court appears to be substantially in doubt, a stay of incarceration granted either by the district judge or by us pending appeal is available. *Cf.* 28 U.S.C. § 1826(b); *In re Grand Jury Proceedings (Horak)*, 625 F.2d 767 (8th Cir. 1980), *cert. denied*, 449 U.S. 840, 101 S.Ct. 117, 66 L.Ed.2d 47 (1980).

 I simply am not impressed by the claimed plight of a lawyer, whose client leaves the field of battle demanding that the lawyer remain to defend him, and who then chooses to accept a contempt citation and to go to jail where the prospects of success on appeal are too slight to justify a stay pending resolution on appeal.

In sum, my disagreement is not with the majority's zealous concern for the interests which adhere to the attorney-client relationship. Rather, I do not believe it necessary to depart radically from settled grand jury procedures. Therefore I dissent.