**In re GRAND JURY PROCEEDINGS.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**The BANK OF NOVA SCOTIA,**
**Defendant-Appellant.**

**No. 82–5831.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 29, 1982.

---

King & Spalding, Griffin B. Bell, Charles Kirbo, James A. Pardo, Jr., Atlanta, Ga., Steel, Hector, Davis, Burns & Middleton, Talbot D'Alemberte, Thomas R. Julin, Palm Beach, Fla., for defendant-appellant.

Glenn L. Archer, Jr., Michael L. Paup, Charles E. Brookhart, Alan Hechtkope, Asst. Attys. Gen., Tax Div., Dept. of Justice, Veta M. Carney, D. Lowell Jensen, Asst. Atty. Gen. Crim. Div., Narcotics & Dangerous Drug Section, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before FAY and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

The Bank of Nova Scotia appeals from an order of the United States District Court for the Southern District of Florida holding the Bank of Nova Scotia in civil contempt for failing to comply with an order of the court enforcing a grand jury subpoena duces tecum. The Bank of Nova Scotia (the Bank) presents three arguments against enforcing the subpoena. The Bank first contends that there were insufficient grounds to enforce the subpoena. The Bank also contends that enforcing the subpoena would violate due process. Finally, the Bank argues that the subpoena should not be enforced as a matter of comity between nations. We find the Bank's contentions to be

without merit, and therefore we affirm the district court.

## I. FACTS

The Bank of Nova Scotia is a Canadian chartered bank with branches and agencies in forty-five countries, including the United States and the Bahamas. A federal grand jury conducting a tax and narcotics investigation issued a subpoena duces tecum to the Bank calling for the production of certain records maintained at the Bank's main branch or any of its branch offices in Nassau, Bahamas and Antigua, Lesser Antilles, relating to the bank accounts of a customer of the Bank.[1] The subpoena was served on the Bank's Miami, Florida agency on September 23, 1981. The Bank declined to produce the documents asserting that compliance with the subpoena without the customer's consent or an order of the Bahamian courts would violate Bahamian bank secrecy laws.[2]

A hearing was held on the government's motion to compel the Bank to comply with the subpoena on January 13, 1982. At the hearing conflicting evidence was presented

1. The Bank investigated and found no documents which were requested located at its Antigua branch. Accordingly, that part of the subpoena is not in issue.

2. Banks and Trust Companies Regulations Act of 1965, 1965 Bah. Acts No. 64, as amended by the Banks and Trust Companies Regulation (Amendment) Act, 1980, 1980 Bah. Acts No. 3, and Section 19 of the Banks Act, III Bah.Rev. Laws, c. 96 (1965), as amended by the Banks Amendment Act 1980, 1980 Bah. Acts No. ———. Both Section 10 and Section 19 are identical. Section 10 of the Bank and Trust Companies Regulation Act as amended provides:

Preservation of secrecy

10.—(1) No person who has acquired information in his capacity as—
(a) director, officer, employee or agent of any licensee or former licensee;
(b) counsel and attorney, consultant or auditor of the Central Bank of The Bahamas, established under section 3 of the Central Bank of The Bahamas Act 1974, or as an employee or agent of such counsel and attorney, consultant or auditor;
(c) counsel and attorney, consultant, auditor, accountant, receiver or liquidator of any licensee or former licensee or as an employee or agent of such counsel and attorney, consultant, auditor, accountant, receiver or liquidator;
(d) auditor of any customer of any licensee or former licensee or as an employee or agent of such auditor;
(e) the Inspector under the provisions of this Act,
shall, without the express or implied consent of the customer concerned, disclose to any person any such information relating to the identity, assets, liabilities, transactions, accounts of a customer of a licensee or relating to any application by any person under the provisions of this Act, as the case may be, except—
(i) for the purpose of the performance of his duties or the exercise of his functions under this Act, if any; or
(ii) for the purpose of the performance of his duties within the scope of his employment; or
(iii) when a licensee is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The Bahamas.
—(2) Nothing contained in this section shall—
(a) prejudice or derogate from the rights and duties subsisting at common law between a licensee and its customer; or
(b) prevent a licensee from providing upon a legitimate business request in the normal course of business a general credit rating with respect to a customer.
—(3) Every person who contravenes the provisions of subsection (1) of this section shall be guilty of an offense against this Act and shall be liable on summary conviction to a fine not exceeding fifteen thousand dollars or to a term of imprisonment not exceeding two years or to both such fine and imprisonment.

The government argues the Bank would not be successfully prosecuted by Bahamian authorities if it complied with the subpoena. In this regard it argues that because Section 10(2)(a) expressly preserves the common law relationship between bank and customers, the Bank is authorized to disclose the requested information. See *Tournier v. National Provincial and Union Bank of England*, [1924] 1 K.B. 461 (Banker may disclose banking information concerning a customer where the banker is compelled by law to disclose information); *Barclay's Bank International, Ltd. v. McKinney*, No. 474 (Bah. S.Ct. Feb. 16, 1979). Although the determination of foreign law is reviewable on appeal, F.R.Civ.P. 44.1, we shall assume for purposes of this appeal that the Bank will be subject to criminal sanctions in the Bahamas.

as to the degree of control the Miami agency held over documents held by the Nassau branch. The government presented evidence that all banking transactions for accounts in the Bahamian branch could be handled by the Miami agency. The Bank presented evidence that the Miami agency is a one-way conduit for customer communication with the Nassau branch. The Bank also presented an affidavit showing that compliance with the subpoena could expose the Bank to prosecution under the Bahamian bank secrecy law. The affidavit also showed that the government could obtain an order of judicial assistance from the Supreme Court of the Bahamas allowing disclosure if the subject of the grand jury investigation is a crime under Bahamian law and not solely criminal under United States tax laws. The government did not make a showing that the documents sought are relevant and necessary to the grand jury's investigation.[3]

After the district court entered an order compelling the Bank to comply with the subpoena, the Bank's Miami agent appeared before the grand jury and formally declined to produce the documents called for by the subpoena. The district court held the Bank in civil contempt and the Bank brings this appeal.

## II. RELEVANCE OF THE DOCUMENTS

The Bank urges this court to follow the Third Circuit's holdings in *In re Grand Jury Proceedings,* 486 F.2d 85 (Schofield I), (3rd Cir.1973), and *In re Grand Jury Proceedings,* 507 F.2d 963 (Schofield II), (3rd Cir. 1975), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975), and require the

government to show that the documents sought are relevant to an investigation properly within the grand jury's jurisdiction and not sought primarily for another purpose. The government does not dispute that the district court enforced the subpoena without making a finding that the documents sought were relevant or necessary for the grand jury's investigation. Rather, the government argues this case is controlled by *In re Grand Jury Proceedings. United States v. McLean,* 565 F.2d 318 (5th Cir.1977), and *In re Grand Jury Proceedings. United States v. Guerrero,* 567 F.2d 281 (5th Cir.1978),[4] where the Fifth Circuit declined to follow the *Schofield* rule absent some showing of harassment or prosecutorial misuse of the system. The bank argues that the *Schofield* rule, however, should be applied to cases such as this where foreign relations are implicated and where alternative methods are available to obtain the requested information that do not require the Bank to violate foreign law.

The guidelines established by the Third Circuit in *Schofield* are not mandated by the Constitution; the Third Circuit imposed the requirements under that court's inherent supervisory power. *Schofield,* 486 F.2d at 89; *McLean,* 565 F.2d at 320. We decline to impose any undue restrictions upon the grand jury investigative process pursuant to this court's supervisory power.[5]

It is unnecessary to repeat here the vital role the grand jury plays in our system of jurisprudence. See, *In re Grand Jury Proceedings. United States v. Field,* 532 F.2d 404, 407–09 (5th Cir.1976), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976). As stated by the court in *McLean:*

---

3. At a January 13, 1982 hearing the government submitted an *in camera* affidavit regarding the relevance of the documents sought. This document was not considered by the court below. We conclude it is unnecessary to view the document. See Part II, *infra.*

4. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), adopted as precedent the decisions of the Former Fifth Circuit decided prior to October 1, 1981.

5. Other circuits have declined to adopt such a rule. See, *e.g., In re Pantojas,* 628 F.2d 701 (1st Cir.1980); *In re Liberatore,* 574 F.2d 78 (2d Cir.1978). See also *In re Special Grand Jury No. 81–1 (Harvey),* 676 F.2d 1005 (4th Cir.1981) (reserving question of whether preliminary showing must be made in every case).

Any holding that would saddle a grand jury with mini-trials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws. *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973).

*In re Grand Jury Proceedings. United States v. McLean,* 565 F.2d at 320.

■ While it is true courts should not impinge upon the political prerogatives of the government in the sensitive area of foreign relations, *Chicago and Southern Air Lines v. Waterman Steamship Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948), accepting the Bank's position would be a greater interference with foreign relations than the procedures employed here. In essence, the Bank would require the government to chose between impeding the grand jury's investigation and petitioning the Supreme Court of the Bahamas for an order of disclosure.

This court is cognizant that international friction has been provoked by enforcement of subpoenas such as the one in question. See, Restatement (Revised) of Foreign Relations Law of the United States § 420, Reporter's Note 1. See generally, *Rio Tinto Zinc Corp. v. Westinghouse Electric Corp.,* [1978] A.C. 547, 616, 629–31, 639–40, 650 (H.L.) (criticizing the United States for claims of "jurisdiction over foreigners in respect to acts done outside the jurisdiction of that country"). But as recognized in *United States v. First National City Bank,* 379 U.S. 378, 384–85, 85 S.Ct. 528, 531–32, 13 L.Ed.2d 365 (1965), the various federal courts remain open to the legislative and executive branches of our government if matters such as this prove to have international repercussions. See, *e.g.,* Convention on Double Taxation of Income, September 27, 1951. United States-Switzerland, 2 U.S.T. 1751, T.I.A.S. No. 2316 (Swiss-US Tax Treaty providing for exchange of information for, inter alia, the prevention of fraud.)

## III. DUE PROCESS

■ The Bank contends that compliance with the subpoena would require it to violate the Bahamian bank secrecy law and therefore enforcing the subpoena and imposing contempt sanctions for noncompliance violates due process under *Societe Internationale Power Participations Industriells v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The Bank argues that once it has shown Bahamian law bars production of the documents and that it is a disinterested custodian of the documents due process prohibits enforcement of the subpoena. We disagree.

The Bank attempts to fashion a due process defense to the contempt proceedings because of its lack of purposeful involvement or responsibility in the subject matter before the court. In essence, the Bank asserts it is fundamentally unfair to require a "mere stakeholder" to incur criminal liability in the Bahamas. The Bank's position does not withstand analysis.

In *Societe Internationale* a Swiss holding company brought an action to recover assets seized under the Trading with the Enemy Act. The district court had ordered production of certain banking records of a Swiss bank pursuant to the government's discovery request. The holding company failed to comply with the court's order, after good faith efforts were made to comply, on the grounds that compliance would violate Swiss penal laws. The district court then dismissed the suit with prejudice due to noncompliance with the production order. In reversing the district court, the Supreme Court did not erect an absolute bar to sanctions being imposed for noncompliance with summons or subpoenas whenever compliance is prohibited by foreign law. *Societe Internationale,* 357 U.S. at 105–06, 78 S.Ct. 1092–93; *United States v. Vetco, Inc.,* 644 F.2d 1324, 1329 (9th Cir.1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671 (1981). *Societe Internationale* held only that the sanction of outright dismissal of that plaintiff's complaint could not be imposed where that

plaintiff had acted in good faith, was unable to comply because of foreign law, and was entitled to a hearing on the merits in order for the Trading with the Enemy Act to withstand constitutional challenge. *Societe Internationale,* 352 U.S. at 211–12, 78 S.Ct. at 1095–96. Compare, *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 n. 14, 100 S.Ct. 2455, 2464 n. 14, 65 L.Ed.2d 488 n. 14 (1980). (emphasizing bad faith vs. inability to comply dichotomy). See *United States v. Vetco,* 644 F.2d at 1329–30. The Court left the district court free to impose other sanctions. *Societe Internationale,* 357 U.S. at 213, 78 S.Ct. at 1096. *Societe Internationale* does not stand for the proposition that a lawfully issued grand jury subpoena may be resisted on constitutional grounds where compliance would violate foreign criminal law. See, *e.g., United States v. Vetco, Inc.,* 644 F.2d at 1329; *Ohio v. Arthur Andersen & Co.,* 570 F.2d 1370 (10th Cir.1978), *cert. denied,* 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1979); *SEC v. Banca Della Suizzera Italiance,* 92 F.R.D. 111 (S.D.N.Y.1981).

The Bank has failed to bring itself within the holding of *Societe Internationale.* The district court found the Bank had not made a good faith effort to comply with the subpoena in its order of June 11, 1982. Record at 140. The Bahamian government has not acted to prevent the Bank from complying with the subpoena. Finally, the Bank is not being denied a constitutionally required forum to recover confiscated assets.[6]

## IV. COMITY

▮ The Bank's final contention is that comity between nations precludes enforcement of the subpoena. The Bank argues that the district court improperly analyzed this case under the balancing test of the Restatement (Second) of Foreign Relations Law of the United States § 40 (1965) adopted in *In re Grand Jury Proceedings. United States v. Field,* 532 F.2d 404 (5th Cir.1976), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976).[7] The district court concluded that because compliance with the subpoena may cause the Bank to violate Bahamian penal laws, it was appropriate to follow the balancing test adopted in *Field.* Because we conclude this case is controlled by *Field,* we affirm the court below.

In *Field* contempt penalties were upheld against a nonresident alien who, having been subpoenaed to testify before a grand jury while present in the United States, refused to answer questions before the grand jury, despite the witness' assertion that the very act of testifying would subject him to criminal penalties in his country of residence. *Id.* at 405. The grand jury was investigating the use of foreign banks in evading tax enforcement. Field was an officer of a bank located in the Grand Cay-

---

**6.** It is difficult to fashion due process protections recognizing the differential argued by the Bank, i.e., stakeholder vs. participant. If fairness is the key, as is asserted here, then it seems hardly offensive to "traditional notions of fair play and substantial justice," *Millikeri v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), to subject entities who do business in the United States and thereby voluntarily bring themselves within the jurisdiction of our courts and legislatures to the burdens of United States law.

**7.** Section 40 reads:

Limitations on Exercise of Enforcement Jurisdiction

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

man Islands, British West Indies, and was subpoenaed to testify about matters concerning his bank and its clients. *Id.* at 405–06. After balancing the competing interests of the United States and the Cayman Islands under the Restatement approach, the court affirmed the district court's imposition of contempt sanctions against Field. *Id.* at 407–09.

The situation before us is similar to that in *Field* in all material respects. The Bank has been subpoenaed while subject to the jurisdiction of our courts and has been required to disclose information before a grand jury even though the very fact of disclosure may subject the Bank to criminal sanctions by a foreign sovereign.

The Bank attempts to distinguish *Field* from the case before us on four grounds. The Bank first asserts that the Bank itself is not under investigation by the grand jury, unlike the situation in *Field.* See *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) (Castle Bank and Trust Company of Nassau, Bahamas under investigation in 1972 as part of narcotics investigation known as "Operation Trade Winds"). A careful reading of *Field* reveals that the fact that Castle Bank and Trust Company was under investigation did not affect the court's analysis. That court was concerned with the proliferation of foreign secret bank accounts utilized by Americans to evade income taxes and conceal crimes. *In re Grand Jury Proceedings. United States v. Field,* 523 F.2d at 407–08. The instant subpoena calls for the production of certain records relating to bank accounts of a United States citizen pursuant to a tax and narcotics investigation.

Second, the Bank argues this case is distinguishable from *Field* because documentary evidence is requested here rather than testimonial evidence as in *Field.* The distinction, while real, is immaterial. The case before us concerns the relations among nations; whether the subpoena will be enforced is a matter of international comity. *Id.* at 407. Comity is "a nation's expression

of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Limited v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435 (3rd Cir.1971), *cert. denied,* 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). Whether the requested information is testimonial or documentary, the effect on the competing state interests will be the same. The deference accorded the Bahamian interest is not to be diminished by the form of the requested information.

Third, the bank argues this case is distinguishable from *Field* because the instant subpoena calls for information located in the Bahamas instead of the United States. This argument is without merit for two reasons. First, the disclosure to the grand jury will occur in this country. See *United States v. Vetco, Inc.,* 644 F.2d at 1332. Second, the affront to the Bahamas occurs no matter where the information is originally located; the interest of the Bahamas in preserving the secrecy of these records is impinged by the fact of disclosure itself.

Finally, the Bank contends the government "could avoid rather than provoke disrespect for the sovereignty of a friendly nation" by pursuing the alternative of applying for an order of judicial assistance permitting disclosure from the Supreme Court of the Bahamas. Brief of Appellant at 18. See *United States v. Vetco, Inc.,* 644 F.2d at 1332; *United States v. First National City Bank,* 396 F.2d 897 (2d Cir.1968); Restatement (Revised) of Foreign Relations Law of the United States § 420 (Tent. Draft No. 3, 1982). Applying for judicial assistance, however, is not a substantially equivalent means for obtaining production because of the cost in time and money and the uncertain likelihood of success in obtaining the order. According to the affidavit from a member of the Honorable Society of Lincoln's Inn, England, and of the Bahamas Bar, the Supreme Court of the Bahamas does not have power to order disclosure if the subject of the investigation is

criminal only under the tax laws of the United States. Therefore, it is not clear to any degree of certainty that the Bahamian court would order disclosure of all the requested documents.[8]

The judicial assistance procedure does not afford due deference to the United States' interests. In essence, the Bank asks the court to require our government to ask the courts of the Bahamas to be allowed to do something lawful under United States law. We conclude such a procedure to be contrary to the interests of our nation and outweigh the interests of the Bahamas.

In *Field* the vital role of a grand jury's investigative function to our system of jurisprudence and the crucial importance of the collection of revenue to the "financial integrity of the republic" outweighed the Cayman Islands' interest in protecting the right of privacy incorporated into its bank secrecy laws. *In re Grand Jury Proceedings. United States v. Field*, 532 F.2d at 407–08. The United States' interest in the case before us has not been diminished since *Field* was decided. The Bank asserts the Bahamas' interest in the right of privacy; this interest is similarly outweighed. A Bahamian court would be able to order production of these documents. Banks and Trust Companies Regulation Act, 1965 Bah. Acts No. 64, § 10(I)(iii), as amended 1980 Bah. Acts No. 3. In addition, numerous officials, employees, attorneys, and agents of the Bank of Nova Scotia or the Central Bank of the Bahamas may disclose information regarding the account in the performance of their various functions under the Bank Act. *Id.* § 10(1)(a–e). It is incongruous to suggest that a United States court afford greater protection to the customer's right of privacy than would a Bahamian court simply because this is a foreign tribunal. *In re Grand Jury Proceedings. United States v. Field*, 535 F.2d at 408. A statute that is "hardly a blanket guarantee of privacy" does not present a Bahamian

interest sufficient to outweigh the United States' interest in collecting revenues and insuring an unimpeded and efficacious grand jury process. See *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 n. 4 (1980) (predecessor statute identical in relevant parts held not to create a reasonable expectation of privacy).

## V. CONCLUSION

Absent direction from the Legislative and Executive branches of our federal government, we are not willing to emasculate the grand jury process whenever a foreign nation attempts to block our criminal justice process. It is unfortunate the Bank of Nova Scotia suffers from differing legal commands of separate sovereigns, but as we stated in *Field:*

> In a world where commercial transactions are international in scope, conflicts are inevitable. Courts and legislatures should take every reasonable precaution to avoid placing individuals in the situation [the Bank] finds [it]self. Yet, this court simply cannot acquiesce in the proposition that United States criminal investigations must be thwarted whenever there is conflict with the interest of other states.

*In re Grand Jury Proceedings. United States v. Field*, 535 F.2d at 410.

For the reasons stated above, the judgment entered by the district court is

AFFIRMED.