**In re GRAND JURY PROCEEDINGS.**

**UNITED STATES of America, Appellee.**

v.

**Anthony R. FIELD, Appellant.**

No. 76–1739.

United States Court of Appeals,
Fifth Circuit.

May 13, 1976.

Rehearing and Rehearing En Banc
Denied June 28, 1976.

Jose E. Martinez, Miami, Fla., John L. O'Donnell, Jr., Orlando, Fla., for appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert E. Lindsay, Charles E. Brookhart, Bernard S. Bailor, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal presents the situation where an alien who was subpoenaed while present in the United States is required to testify before a grand jury even though the very act of testifying will probably subject him to criminal prosecution in his country of residence. The case arises as an appeal from the Southern District of Florida of an order of commitment for civil contempt for refusal to answer grand jury questions. Anthony R. Field contends that the requirement that he testify is a violation of his Fifth Amendment rights. Field, moreover, contends that he should not be required to testify as a matter of comity between nations. Finally, he attacks the power of the government to issue the subpoena and the procedures used in issuing this particular subpoena. We find that requiring Field to testify violates neither the Constitution nor international comity and that the subpoena was properly issued. Therefore, we affirm the district court.

Presently, a grand jury in the Southern District of Florida is investigating possible criminal violations of tax laws. Part of this investigation centers on the use of foreign banks to evade tax enforcement. Field, a Canadian citizen, is the managing director of Castle Bank and Trust Company (Cayman), Ltd. which is located in Georgetown, Grand Cayman Island, British West Indies.[1] On January 12, 1976, Field, while in the lobby of the Miami International Airport, was served with a subpoena directing him to appear before the grand jury on January 20. During his testimony, Field was asked several questions concerning his activities on behalf of Castle and its clients. Field, however, refused to answer these questions on the ground that he would incriminate himself in violation of his Fifth Amendment rights and also on the ground that his testimony would violate the bank secrecy laws[2] of the Cayman Islands. On February 18, 1976, Field was granted immunity and ordered to resume his testimony. Field still refused to answer the questions.

A hearing was held on Field's motion to quash and the government's motion to compel testimony on March 18, 1976. At that hearing, the government demonstrated that Castle Bank had engaged in activities within the United States including maintaining deposits in American banks and engaging in certain securities transactions. The government also demonstrated that another bank, Castle Bank and Trust Company (Bahamas), had extensive dealings in the United States in real estate. Pointing out that Castle (Cayman) and Castle (Bahamas) had several of the same officers and that apparently the two organizations had commingled funds, the government argued that much of the activity of Castle (Bahamas) should be imputed to Castle (Cayman). The government did not demonstrate that Field held any office in or was an employee of Castle (Bahamas). Nor did the government present any evidence concerning tax evasion or explain in detail what evidence it planned to present before the grand jury.

Besides characterizing Castle (Cayman) activities in the United States as minor,

---

1. The British West Indies is a Royal Crown Colony of the United Kingdom. The colony, however, appears to have a great deal of autonomy.

2. Bank and Trust Companies Regulation Law, 1966 (Law 8) (Cayman Islands).

Field did not seriously challenge the government's evidence. On the other hand, Field argues that requiring his testimony before the grand jury concerning matters pertaining to Castle (Cayman) would violate the law of the Cayman Islands. He submitted an affidavit by an expert on Cayman law that stated that Field could be subject to criminal punishment for answering the questions before the grand jury. The affidavit, moreover, stated that the bank examiner of the Cayman Islands could require Field to state whether he had testified before the grand jury. If Field refused to answer the questions of the bank examiner, he was subject to a criminal penalty of up to six months imprisonment. The government did not contest that Field in testifying before the grand jury would subject himself to criminal prosecution in the Cayman Islands, his place of employment and residence. After ordering Field to testify the district court stated,

> I think the record should show that this court finds that there is, in fact, a reasonable probability that Mr. Field is going to be exposed to some criminal charges and some criminal punishment for violating the Cayman Bank Secrecy Act.

Upon stipulation that Field would continue to refuse to answer the questions before the grand jury, the district court held him in civil contempt and Field appeals pursuant to 28 U.S.C. § 1826(b).[3]

Before discussing in detail Field's contentions, we should make clear what is not involved in this case. Field does not argue that the content of his answers before the grand jury will subject him to prosecution in the Cayman Islands. The problem is not the answers that Field will give to the grand jury but the fact that he will give any answers at all. A different case would be presented if Field had demonstrated that the content of his answers could be used as evidence against him in foreign prosecu-

tions.[4] *See, In re Tierney,* 465 F.2d 806 (5th Cir. 1972), cert. denied, 410 U.S. 914, 93 S.Ct. 959, 35 L.Ed.2d 276 (1973). In such a case, a difficult question concerning Fifth Amendment protection against self-incrimination would be present. *Zicarelli v. New Jersey Investigation Commission,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1674, 32 L.Ed.2d 234, 239 (1972).

Field does argue that the Fifth Amendment prohibition against compulsory self-incrimination encompasses his present situation. In essence, he contends that since the act of testifying subjects him to foreign prosecution, requiring his testimony would be compelling Field to be a witness against himself.

▆▆▆ We believe Field has misconstrued the scope of the protection against self-incrimination. The Fifth Amendment, as the Supreme Court stated in *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) protects against only the use of testimony. There the Court stated,

> A witness protected by the privilege may rightfully refuse to answer unless and until he is protected *at least against the use* of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. (Emphasis added.) *Id.* at 78, 94 S.Ct. at 322, 38 L.Ed.2d at 282.

As this passage indicates the fact of testifying is not protected by the Fifth Amendment. *See also, Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, 221 (1972). The consistent interpretation of the Amendment has been to insure that a person would not be required to give testimony that tended to show that the person had committed a crime. *Counselman v. Hitchcock,* 142 U.S. 547, 563, 12 S.Ct. 195, 198, 35 L.Ed. 1110, 1114 (1892). Historically, the privilege was adopted to

---

**3.** Section 1826(b) provides that appeals will be decided in thirty days. In order to obtain full briefs and to provide for oral argument we extend the period of decision an extra thirty days to May 17, 1976. *See Beverly v. United States,* 468 F.2d 732 (5th Cir. 1972).

**4.** At oral argument, Field's attorney stated that he did not anticipate that any answers Field might give to the grand jury will provide information concerning any violations of Cayman law.

restrain the state from submitting to the temptation of resorting to the expedient of compelling incriminating evidence from one's own mouth. *Couch v. United States*, 409 U.S. 322, 327, 93 S.Ct. 611, 615, 34 L.Ed.2d 548, 553 (1973). This subpoena is not an attempt to elicit information from Field which will later be used against him in a criminal case. The Fifth Amendment simply is not pertinent to the situation where a foreign state makes the act of testifying a criminal offense.

Field's second contention is that as a matter of international comity this court should refuse to enforce the subpoena. In this contention, Field requests that an appropriate accommodation between the law of the United States and that of the Cayman Islands is for this court, exercising its discretion, to decline enforcement. Field argues that nations should make every effort to avoid the situation present here, where one nation requires an act that the other nation makes illegal. *See United States v. First National City Bank*, 396 F.2d 897 (2d Cir. 1968); Restatement (2nd), Foreign Relations Law of the United States, § 40 (1965).

 We begin with the proposition that the fact that the district court's order will subject Field to criminal prosecution in his country of residence does not of itself prohibit enforcement of the subpoena. Restatement (2nd), Foreign Relations Law of the United States, § 39 (1965). *See also, American Industrial Contracting, Inc. v. Johns-Manville Corp.*, 326 F.Supp. 879 (W.D.Pa.1971). The Restatement[5] position requires a balancing of the several factors in determining whether the United States

or, in this case, the Cayman Islands' legal command will prevail.

 The first and most important factor to be considered is the relative interest of the states involved. In this case, the United States seeks to obtain information concerning the violation of its tax laws. In contradistinction, the Cayman Islands seeks to protect the right of privacy that is incorporated into its bank secrecy laws. Unfortunately, the Cayman Government position appears to be that any testimony concerning the bank will violate its laws. Therefore, either the United States or the Cayman interest must give way.

 Under our system of jurisprudence the grand jury's function in investigating possible criminal violations is vital. Recently, the Supreme Court has succinctly explained why undue restrictions on our criminal justice system's ability to obtain evidence would be unwarranted. The Court stated:

> The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and the public confidence in the system depends on full disclosure of all facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense. *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1064 (1974).

---

**5.** Section 40, Restatement (2nd) Foreign Relations Law of the United States, reads:

Limitations on Exercise of Enforcement Jurisdiction

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in the light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

To the degree that the ability to obtain evidence is crucial to all criminal justice proceedings, the need for broad authority in the grand jury is greatest. The Supreme Court has stated "the grand jury's authority to subpoena witnesses is not only historic but essential to its task." *Branzburg v. Hays*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626, 643 (1973). Courts have repeatedly allowed the grand jury wide discretion in seeking evidence. *See, United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). Generally, the normal rule providing for the exclusion of evidence obtained by illegal means does not apply to the grand jury. *See, United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The Supreme Court, as well as this court, has rejected not insubstantial First Amendment claims which would have restricted the power of the grand jury to obtain the information. *Branzburg v. Hays, supra; Beverly v. United States*, 468 F.2d 732 (5th Cir. 1972). Even the President of the United States under proper circumstances can be required to produce evidence before the grand jury. *Nixon v. Sirica*, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973). Finally, courts have consistently rejected the contention that one may refuse to testify before grand juries due to fear of personal safety. *See, e. g., United States v. Leyva*, 513 F.2d 774, 780 (5th Cir. 1975); *In re Long Vistor*, 523 F.2d 443, 447–48 (8th Cir. 1975). To defer to the law of the Cayman Islands and refuse to require Mr. Field to testify would significantly restrict the essential means that the grand jury has of evaluating whether to bring an indictment.

In addition to the necessity of the grand jury being able to obtain evidence, this country allows wide discretion to investigatory bodies in obtaining information concerning bank activities. *United States v. Miller*, —— U.S. ——, 96 S.Ct. 1619, 48 L.Ed.2d 71, 44 L.W. 4528 (1976). There could be no question that Mr. Field would be required to respond to the grand jury's questions if this was solely a domestic case.

Nor is the United States alone in granting wide discretion to its investigators in obtaining information from financial institutions, particularly where tax evasion is concerned. In the United Kingdom apparently such evidence can be obtained. *See Clinch v. England Revenue Commissioners*, [1974] 1 Q.B. 76; [1973] 2 W.L.R. 862; [1973] 1 All.E.R. 976; *Williams v. Summerfield*, [1972] 2 Q.B. 512; [1972] 3 W.L.R. 131; [1972] 2 All.E.R. 1334. Indeed, even the Swiss government, which is notorious for protecting the privacy of financial transactions, might provide under certain circumstances to the United States information concerning Swiss banks. See Note, 15 Harv.Int'l.L.J. 349, 359 (1974). Finally, at oral argument, appellant's attorney conceded that under Cayman law the director of banking in the Cayman Islands would be able to obtain information from Field concerning the bank's operations in investigations instituted by legal authority in the Cayman Islands. In short, Field seeks to prohibit a United States grand jury from obtaining information that would have been obtainable by officials there for their own investigations. Since the general rule appears to be that for domestic investigations such information would be obtainable, we find it difficult to understand how the bank's customers' rights of privacy would be significantly infringed simply because the investigating body is a foreign tribunal.

Finally, we reject Field's contention that what is involved here is only economic regulation. The collection of revenue is crucial to the financial integrity of the republic. In addition, the subject being investigated by this grand jury has received considerable attention and has been demonstrated to be a severe law enforcement problem. A report from the House Committee on Banking and Currency outlines the problems created and the type of activities investigated by the grand jury.

> Secret foreign bank accounts and secret foreign financial institutions have permitted a proliferation of 'white collar' crimes; have served as the financial underpinning of organized criminal opera-

tion in the United States; have been utilized by Americans to evade income taxes, conceal assets illegally and purchase gold; have allowed Americans and others to avoid the law and regulations governing securities and exchanges; have served as essential ingredients in frauds including schemes to defraud the United States; have served as the ultimate depository of black market proceeds from Vietnam; have served as a source· of questionable financing for conglomerate and other corporate stock acquisitions, mergers and takeovers; have covered conspiracy to steal from the U. S. defense and foreign aid funds; and have served as the cleansing agent for 'hot' or illegally obtained monies . . .

The debilitating effects of the use of these secret institutions on Americans and the American economy are vast. It has been estimated that hundreds of millions in tax revenues have been lost. H.R.Rep.No.91–975, 91 Cong. 2d Sess. 12 (1970), U.S.Code Cong. & Admin.News 1970, p. 4397.

If this court were to countenance Mr. Field's refusal to testify it would significantly restrict the ability of the grand jury to obtain information which might possibly uncover criminal activities of the most serious nature. In light of the traditional discretion given the grand jury and the significant interest this nation has in tax enforcement, without any specific direction from Congress, we see no reason not to enforce the subpoena.[6]

■ Field also contends that the procedure used in issuing this subpoena was unconstitutional as a deprivation of due process. This subpoena was issued pursuant to Rule 17, Fed.R.Cr.P. which provides that a subpoena shall be issued by the Clerk. Field's position is that he was entitled to a hearing before the subpoena could be issued since the requirement that he appear before the grand jury at a certain time and place

was a deprivation of liberty. He relies solely on *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).·

■ In *Fuentes* the Supreme Court declared unconstitutional a procedure where the clerk of the court could issue a writ of replevin without any prior hearing. The Court stated that the right to a prior hearing was normally required to protect "any significant property interest." 407 U.S. at 86, 92 S.Ct. at 1997, 32 L.Ed.2d at 573. *See also, Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971). More recently the Court has pointed out that "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.'" *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). We believe that the requirement that Field appear before the grand jury is not a significant denial of liberty. It is certainly not a "grievous loss" of liberty. At a minimum, the state can require individuals to appear before government bodies at a reasonable time and place. Field, before being held in contempt, was given a hearing to contest the subpoena. There is no allegation that the subpoena was unreasonable or the government was harassing Mr. Field. *See United States v. Dionisio*, 410 U.S. 1, 9–12, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 76 (1973). Under Rule 17(g), one can be held in contempt only if he fails to appear "without adequate excuse." We find nothing which is repugnant to the Constitution in the procedure used to issue this subpoena.

■ Finally, Field argues that the court lacks power over a non-resident alien even though present in the United States. This contention is without merit as the Second Circuit stated in *United States v. Germann*, 370 F.2d 1019, 1022–23 (2d Cir. 1967).

Of course there is no power to compel such a witness to come from abroad. But

---

**6.** Since the Cayman bank Secrecy Act prohibits disclosure of any information concerning local banks nothing would be gained by limiting the scope of the grand jury questions. Even if such a limitation might alleviate Field's difficul-

ty, this court would be reluctant to supervise the extent of the grand jury's attempt to obtain evidence. *See Branzburg v. Hays*, 408 U.S. 665, 701–705, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626, 651 (1972).

anyone within the jurisdiction of the court may be subpoenaed . . .. It makes no difference where he is resident or of what country he is a citizen.

We regret that our decision requires Mr. Field to violate the legal commands of the Cayman Islands, his country of residence. In a world where commercial transactions are international in scope, conflicts are inevitable. Courts and legislatures should take every reasonable precaution to avoid placing individuals in the situation Mr. Field finds himself. Yet, this court simply cannot acquiesce in the proposition that United States criminal investigations must be thwarted whenever there is conflict with the interest of other states.

We find Field's other contentions to be totally without merit. The judgment of the district court is

AFFIRMED.