ACOCK, SCHLEGEL ARCHITECTS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15907-89, 5466-90.     Filed September 18, 1991.

*Harvey Dunn,* for the petitioner.
*George R. Knox,* for the nonparty.
*Terry W. Vincent,* for the respondent.

### OPINION

HAMBLEN, *Judge:* This matter is before the Court on petitioner's motions filed in each of these cases requesting the Court to compel a nonparty to comply with subpoenae duces tecum and the nonparty's motion to quash filed in each of these cases. The nonparty involved in these motions is David L. Thomas, a certified public accountant who was formerly retained by petitioner. Petitioner is an Ohio architectural corporation, Acock, Schlegel Architects, Inc., whose principal office was in Columbus, Ohio, at the time the petitions were filed in each of these cases. For convenience and clarity, we shall hereinafter refer to Acock,

Schlegel Architects, Inc., as petitioner or petitioner corporation and the nonparty accountant as Mr. Thomas.

The issues that Mr. Thomas and petitioner seek to have adjudicated are: (1) Whether Mr. Thomas' Constitutional Fifth Amendment privilege against self-incrimination would be violated if we granted petitioner's motion to compel him to provide petitioner with a copy of an affidavit that Mr. Thomas previously gave to the Criminal Investigation Division of the Internal Revenue Service; (2) whether we should grant Mr. Thomas' request for a stay of proceeding on petitioner's two tax deficiency cases until any related criminal proceeding involving Mr. Thomas as a defendant has been concluded; and (3) in the event we determine that Mr. Thomas must provide petitioner with a copy of the affidavit, whether we should grant Mr. Thomas' request for a protective order restricting petitioner's use and dissemination of the affidavit.

We assume the following facts based on the parties' pleadings, the motions of petitioner and Mr. Thomas, and the memoranda and documents submitted in support of these motions.

Petitioner filed corporate tax returns for 1984, 1985, and 1986. By separate statutory notices of deficiency, dated April 3, 1989, and December 27, 1989, respondent determined deficiencies in, and additions to, petitioner's 1984, 1985, and 1986 tax returns as follows:

| | | Additions to tax | | | |
| --- | --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1)[1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| 1984 | $189,497 | $9,001 | $9,609 | * | $47,374 |

| | | Additions to tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1985 | $36,243 | $18,122 | ** | $9,061 |

| | | Additions to tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1986 | $54,262 | $2,713 | *** | $13,566 |

*50% of the interest due on $57,891.
**50% of the interest due on $20,285.
***50% of the interest due on $54,262.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner timely filed petitions seeking a redetermination of the above tax deficiencies and additions to tax. In his answer, filed August 24, 1989, respondent conceded the additions to tax for fraud under section 6653(b)(1) and (2) for the taxable year 1985 and asserted that petitioner is liable for additions to tax pursuant to section 6653(a)(1) and (2) for negligence or intentional disregard of rules and regulations.

George W. Acock is president of petitioner corporation and owns 56 percent of its shares. Wayne L. Schlegel is secretary-treasurer of petitioner corporation and owns 44 percent of its shares. Mr. Thomas is principal of a small accounting firm, David L. Thomas, C.P.A., Inc., based in Delaware, Ohio. Mr. Thomas' accounting firm was instrumental in preparing petitioner's 1984, 1985, and 1986 Federal corporate tax returns. In addition, his firm prepared petitioner's State and local tax returns, compiled petitioner's monthly and annual financial statements, and gave petitioner tax advice.

In February 1987, respondent began an examination of petitioner's 1984, 1985, and 1986 corporate tax returns. Mr. Thomas' accounting firm provided documents and other information to the internal revenue agents. During the field examination, the examining agent referred petitioner's cases to the Criminal Investigation Division (hereinafter CID), a division of the Internal Revenue Service, whose function it is to investigate possible criminal violations of the Internal Revenue Code. Shortly thereafter, Mr. Thomas sent petitioner a letter, dated April 3, 1987, terminating his accounting firm's representation of petitioner.

In September 1989, Mr. Thomas voluntarily gave a special agent of the CID an affidavit concerning petitioner's corporate records and tax returns. Mr. Thomas executed the affidavit upon the advice of his attorney, Mr. Daniel A. Brown. This is the affidavit that petitioner now seeks to acquire for use in preparation of its cases for trial. Shortly after Mr. Thomas executed the affidavit, the CID informed him that he was a target of their criminal investigation. Although petitioner corporation was never made a target of the CID investigation, petitioner corporation's president, Mr. Acock, and its secretary-treasurer, Mr. Schlegel, were

named as targets. Mr. Acock, however, has recently been dropped as a target.

On July 2, 1990, pursuant to Rule 74(a), petitioner and respondent filed a joint stipulation to take a deposition of Mr. Thomas as a nonparty witness on July 24, 1990, in Columbus, Ohio. The parties agreed in the stipulation that Mr. Thomas was to bring the following documents with him to assist in giving his testimony at the deposition:

All correspondence, memoranda, research, documents, records, notes, books of original entry or copies thereof, workpapers, and written statements given to the Internal Revenue Service relating to the preparation and filing of the 1984, 1985 and 1986 federal income tax returns of Acock, Schlegel Architects, Inc. and any investigation conducted by the Internal Revenue Service which involves such returns.

During the first week of July 1990, petitioner served two subpoenae duces tecum[2] on Mr. Thomas at his business office in Delaware, Ohio, demanding his personal appearance at the deposition and his production of the documents and memoranda named in the stipulation.

Rule 74(c) states that a nonparty witness has 15 days after receiving a notice of deposition requiring his appearance to object to giving the deposition. Mr. Thomas filed a motion to quash petitioner's subpoenae on July 24, 1990, in docket No. 5466-90 and on July 27, 1990, in docket No. 15907-89, several days after the deadline within which to object. July 24, 1990, is the date the parties had originally set for Mr. Thomas' deposition. In a letter, dated July 25, 1990, Mr. Thomas' counsel indicated to petitioner's counsel that, notwithstanding Mr. Thomas' motion to quash the subpoenae, he would voluntarily provide certain records and testimony at a deposition but preserve his Fifth Amendment right not to incriminate himself. Rule 74(c) provides that, in the event a nonparty witness objects to giving a deposition, the burden is on the party seeking the deposition to move for an order requiring the deponent to comply. Because Mr. Thomas' counsel represented that Mr. Thomas would agree to be deposed and to provide the documents, petitioner's counsel did not immediately move for an order to compel compliance with the subpoenae. However, when

---

[2]Each one of the subpoenae relates to one of petitioner's two cases which have respective docket Nos. 15907-89 and 5466-90.

Mr. Thomas failed to further cooperate or to comply with the subpoenae, petitioner filed a motion on December 17, 1990, to compel compliance with the subpoenae served on Mr. Thomas. Petitioner's motion to compel was scheduled on the motions calendar for a hearing on January 30, 1991, in Washington, D.C.

On January 4, 1991, petitioner's counsel asked respondent's counsel to disclose the affidavit that Mr. Thomas had executed for the CID in September 1989. On January 8, 1991, petitioner received a letter from respondent's counsel indicating that respondent would not disclose to petitioner the affidavit without a protective order restricting petitioner's use of it.

On January 9, 1991, Mr. Thomas gave petitioner the records and documents covered by petitioner's subpoenae except for the affidavit which he had given to the CID. In order to allow petitioner to prepare for the hearing of his motion to compel, scheduled for January 30, 1991, Mr. Thomas agreed to be deposed.

On January 25, 1991, Mr. Thomas was deposed by petitioner's counsel in the presence of respondent's counsel. During the deposition, Mr. Thomas was questioned about the general scope of the accounting services he provided to petitioner, his specific role in preparing petitioner's tax returns, and the nature of the affidavit that he had given to the CID. Mr. Thomas refused to answer numerous questions alleging that he had a right not to incriminate himself under the Fifth Amendment to the Constitution. Although Mr. Thomas refused to produce the affidavit that he gave to the CID, or to answer questions concerning it, he did not explicitly claim the Fifth Amendment privilege with respect to the affidavit during the deposition.

At the hearing on January 30, 1991, petitioner narrowed the scope of its pending motion to compel compliance with the subpoenae to relate only to the affidavit that Mr. Thomas gave to the CID. Petitioner argued: (1) That it needs Mr. Thomas' affidavit in order to adequately prepare its two tax deficiency cases for trial; (2) that the Fifth Amendment does not constitutionally protect Mr. Thomas from having to produce the affidavit that he voluntarily gave to the CID; and (3) in any event, Mr. Thomas waived

whatever constitutional privilege he may have claimed when he voluntarily, and upon the advice of his counsel, gave his affidavit to the CID's special agent. Mr. Thomas advanced three arguments at the hearing: (1) Mr. Thomas' right not to incriminate himself under the Fifth Amendment protects him from having to give petitioner the affidavit because if the information in the affidavit was disclosed to Mr. Schlegel, who is also a CID target, Mr. Schlegel's resulting criminal defense could further incriminate Mr. Thomas; (2) the Court should properly grant Mr. Thomas, a nonparty witness, a stay in petitioner's cases until any criminal proceedings against Mr. Thomas and Mr. Schlegel are concluded; and (3) the Court should grant a protective order stating that the affidavit should be permitted to be viewed by petitioner's counsel, but not by Mr. Schlegel or Mr. Schlegel's criminal defense attorney.[3]

At the conclusion of the hearing, Mr. Thomas was given until March 1, 1991, to file a renewed motion to quash petitioner's subpoenae and a supporting memorandum. Petitioner was ordered to file its response by March 22, 1991. Both sides timely filed these documents with the Court.

On July 8, 1991, respondent sent the U.S. Department of Justice its recommendation that Mr. Thomas and Mr. Schlegel be prosecuted for alleged criminal violations of the internal revenue laws.

The first issue before us is whether the Fifth Amendment privilege against self-incrimination protects Mr. Thomas from having to give petitioner the affidavit that he gave to the CID in September 1989. Petitioner claims that it needs the affidavit to prepare its tax deficiency cases for trial and that the affidavit is well within the proper scope of discovery as provided in Rule 70(b).[4] The Fifth Amendment

---

[3]In his original motion to quash, filed on July 24, 1990, Mr. Thomas argues that various public policy considerations and rule 26.2 of the Federal Rules of Criminal Procedure protect him from having to give petitioner the affidavit or the information that he gave to the CID. However, Mr. Thomas had apparently conceded these arguments by the time petitioner's motion to compel came up for a hearing on Jan. 30, 1991. In any case, we have considered the additional arguments Mr. Thomas advanced in his original motion to quash and find them to be inapplicable to his situation and, therefore, without merit.

[4]Rule 70(b) provides in pertinent part as follows:

Scope of Discovery: (1) The information or response sought through discovery may concern any matter not privileged and which is relevant to the subject matter involved in the pending case. It is not ground for objection that the information or response sought will be

to the Constitution provides in relevant part that "No person * * * shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege against self-incrimination "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." *Kastigar v. United States*, 406 U.S. 441, 444 (1972) (fn. ref. omitted). The Fifth Amendment may properly be invoked whenever a witness reasonably believes that his testimony could "furnish a link in the chain of evidence needed to prosecute" him for a crime. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Although the guarantee must be broadly construed to serve the right it was designed to protect, *Arndstein v. McCarthy*, 254 U.S. 71, 72-73 (1920); *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892), and is entitled to be asserted in any civil, criminal, or administrative proceeding, *Kastigar v. United States, supra*, a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." *Hoffman v. United States*, 341 U.S. at 486. Ultimately, it is the court that decides whether a witness' refusal to answer is privileged. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States*, 341 U.S. at 486-487.

The danger of self-incrimination must be real, not remote or speculative. *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972). When the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege. See *United States v. Fox*, 721 F.2d 32, 40 (2d Cir. 1983); *United States v. Field*, 532 F.2d 404 (5th Cir. 1976).

We find that Mr. Thomas has not carried his burden of establishing that his Fifth Amendment right not to incriminate himself will be violated if he is compelled to give

---

inadmissible at the trial, if that information or response appears reasonably calculated to lead to discovery of admissible evidence, regardless of the burden of proof involved. * * *

petitioner the affidavit that he voluntarily executed for the CID. The Supreme Court has stated that the Fifth Amendment privilege only protects an accused, or a person facing possible criminal prosecution, "from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California,* 384 U.S. 757, 761 (1966) (fn. ref. omitted); *Fisher v. United States,* 425 U.S. 391, 408 (1976). Clearly, the element of compulsion is not present in this case. Mr. Thomas was not forced to execute the affidavit for the CID. Rather, he voluntarily executed it upon the advice of his attorney and, in so doing, waived any claim to the Fifth Amendment privilege that he may have possessed with respect to its contents. *Brown v. United States,* 356 U.S. 148, 155-156 (1958).[5] Once Mr. Thomas gave his affidavit to the CID special agent, the Government became free to use its contents in whatever manner it chooses to prosecute Mr. Thomas. Providing a copy of the affidavit to petitioner does not place Mr. Thomas in any further jeopardy of criminal prosecution than he already is, since the information contained in the affidavit is already in the hands of the Government. *United States v. Kordel,* 397 U.S. 1 (1970).

We are not persuaded by Mr. Thomas' argument that providing a copy of the affidavit to petitioner would subject him to an increased danger of criminal prosecution since the affidavit would in all likelihood be disseminated to Mr. Schlegel, an officer of petitioner corporation, who might use it to prepare his own criminal defense which could be strategically unfavorable to Mr. Thomas. The danger of self-incrimination must be genuine, not merely speculative. *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. at 478. The possibility that Mr. Schlegel might use the contents of the affidavit in preparing his own defense further implicating Mr. Thomas is not a sufficiently concrete danger so as to invoke the Fifth Amendment's protection. Moreover, even if Mr. Schlegel utilized the affidavit in a manner unfavorable to Mr. Thomas' defense, the substance of the affidavit will not have furnished the Government any more facts or links "in the chain of

---

[5]See also 8 J. Wigmore, Evidence, secs. 2276(b), 2277 (McNaughton rev. 1961).

evidence needed to prosecute" Mr. Thomas for a crime. *Hoffman v. United States,* 341 U.S. at 486. Because the Government already has the affidavit in its possession, there is no further danger of incriminating Mr. Thomas by allowing petitioner to disclose its contents.

Mr. Thomas argues that because he had not yet been named as a target of the CID's investigation when he executed the affidavit, he did not appreciate the risk of his criminal prosecution and therefore did not voluntarily waive his Fifth Amendment privilege in giving the affidavit. We do not agree. From the record before us, we find that Mr. Thomas was well aware that he was a potential target of the CID investigation when he gave the special agent the affidavit. Mr. Thomas resigned as petitioner's accountant just after respondent had referred petitioner's cases to the CID. Mr. Thomas' counsel had ongoing discussions with CID special agents before deciding on a date on which Mr. Thomas would give them an affidavit. If Mr. Thomas had wanted to claim Fifth Amendment protection with respect to the information in the affidavit, he had an opportunity to do so, which he waived, at the time he executed it. *United States v. Edgerton,* 734 F.2d 913 (2d Cir. 1984) (a witness need not go beyond the threshold showing of potential incrimination, and be required to prove that the Government will prosecute him, in order to be entitled to the privilege); *United States v. Kordel, supra.*

We have concluded Mr. Thomas waived whatever Fifth Amendment protection that may have been afforded to him when he voluntarily gave the CID his affidavit. We hold that the Fifth Amendment privilege against self-incrimination does not protect Mr. Thomas in this instance and accordingly deny Mr. Thomas' motion to quash petitioner's subpoenae and grant petitioner's motion to compel compliance with subpoenae duces tecum.

The second issue for our decision is whether we should grant Mr. Thomas' request for a stay of proceeding on petitioner's cases until any related criminal proceeding involving Mr. Thomas as a defendant has been concluded. Mr. Thomas, as a nonparty witness, simply has no standing to make such a request. Accordingly, we deny Mr. Thomas' request for a stay of these proceedings. While the two

motions before us were pending, however, respondent also moved for a stay of proceeding in these cases until the criminal proceedings involving Mr. Thomas and Mr. Schlegel were concluded. We have taken respondent's motion under advisement and will not rule on it at this time.

The third issue for our decision is whether we should grant Mr. Thomas' request for a protective order restricting petitioner's use and dissemination of the affidavit that he gave to the CID. Specifically, Mr. Thomas asks us to prohibit petitioner corporation from disclosing the contents of the affidavit to one of its principal shareholders and officers, Mr. Schlegel, or to Mr. Schlegel's counsel. We have already stated that Mr. Schlegel's possible use of the affidavit to prepare his own criminal defense in a manner strategically unfavorable to Mr. Thomas' criminal defense does not raise Fifth Amendment concerns of Mr. Thomas since the CID already has Mr. Thomas' affidavit in its possession. Consequently, Mr. Thomas' request for a protective order is not warranted since he does not have a sufficient interest to protect. Accordingly, we will deny Mr. Thomas' motion for a protective order.

We shall issue an order denying Mr. Thomas' motion to quash petitioner's subpoenae and granting petitioner's motion for order to compel compliance with subpoenae duces tecum of nonparty, but the Court will withhold directives with respect to compliance until such time as it disposes of pending motions filed by the parties in these cases.

To reflect the foregoing,

*An appropriate order will be issued.*